(118 So. 887)

No. 29215.

## PASSERA v. CITY OF NEW ORLEANS.

July 2, 1928.   On Rehearing, Nov. 26, 1928.

D. V. Doussan, of New Orleans, for appellants.

McCloskey & Benedict, of New Orleans, for appellee Passera.

Bertrand I. Cahn, City Atty., Francis P. Burns, Asst. City Atty., and William F. Conkerton, all of New Orleans, for appellee city of New Orleans.

Dart & Dart and Louis C. Guidry, all of New Orleans, amicus curiæ.

BRUNOT, J.   This is a petitory action. The property involved was formerly a portion of the bed of Dublin street canal. It is in the Seventh district of the city of New Orleans, in square No. 414, bounded by Dublin, Pritchard, and Apricot streets and Carrollton avenue. It forms the corner of Dublin and Pritchard streets, and measures 46 feet 6 inches front on Pritchard by a depth, between parallel lines, of 120 feet.

The petition alleges that plaintiff is the owner of the property, that the city of New Orleans claims to be in possession thereof, and that said city is without any right or title thereto, but is a trespasser thereon. The prayer is for a judgment decreeing plaintiff to be the owner in fee simple of the property, decreeing the city of New Orleans without

right, title, or interest therein, and reserving to plaintiff the right to claim damages for the occupancy thereof.

The defendant, in its answer, denies that plaintiff is the owner of the property, or that defendant is without right or title thereto, or that it is a trespasser thereon. For further answer defendant alleges that the Dublin street canal was constructed long prior to 1871, and was constantly used by it as a drainage canal from the date of its completion until three or four years past, when its use for such purpose was discontinued and the canal filled up, to be used as a public parkway; and that it has had continuous, actual, physical possession of the property for more than 50 years. Defendant also pleads, in bar of the plaintiff's suit, the prescription of 30 years' possession.

The heirs of Bernard Melun and Daniel Loze intervened in the suit claiming title to property of a larger area, but including the property involved in this suit. The plaintiff and defendant answered the petition of the interveners. The plaintiff, in his answer thereto, pleads estoppel and the prescription of 10 years' acquirendi causa; and the defendant pleads recognition by interveners of the public character of the canal dedication to public use and the prescription of 30 years' possession.

The case was tried and judgment was rendered in favor of the plaintiff and against the city of New Orleans as prayed for in the petition, and the intervention of the said Melun and Loze heirs was dismissed. From this judgment the interveners alone appealed. The city of New Orleans has filed a very able brief in the case, but, as it did not appeal from the judgment, which has now become final, as to it, we cannot consider its brief.

The issue in the case which we are called upon to decide is whether or not the sale to plaintiff and to his authors in title was a sale per aversionem.

Messrs. Dart & Dart and Louis C. Guidry, as amicus curiæ, have filed a brief in support of the position of the plaintiff herein.

█ It is the accepted rule that a sale per aversionem conveys all of the property found within the boundaries given. Johnston v. Quarles, 3 La. 90, 22 Am. Dec. 163; Grafton v. Wells, 4 La. 534; Harman v. O'Moran, 18 La. 526; Labiche v. Jahan, 9 Rob. 30; Keay v. N. O. Canal Co., 7 La. Ann. 259; Nichols v. Adams, 9 La. Ann. 117; Ragan v. Gwinn, 19 La. Ann. 133; Leonard v. Forbing, 109 La. 220, 33 So. 203.

The fact that measurements are given in sales per aversionem does not effect the general rule. Cuny v. Archinard, 5 Mart. (N. S.) 238.

█ A sale in which specific boundaries are given is a sale per aversionem, or a sale from one fixed boundary to another. It conveys all of the land within the boundaries given, whether the measure be correctly stated in the deed or not. The designation of the boundaries control the enumeration of the quantity. C. C. art. 2471 (now art. 2495); Brazeale v. Bordelon, 16 La. 333; Prejean v. Giroir, 19 La. 422; Saulet v. Trepagnier, 2 Rob. 357; Zeringue v. Williams, 15 La. Ann. 76; Barrow v. Miller, 16 La. Ann. 114; Surgi v. Shooter, 17 La. Ann. 68. In this connection we quote C. C. art. 854, which is as follows:

"If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, although it give him a greater quantity of land than is called for in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title."

█ It is also a well-settled rule in our jurisprudence that, in a controversy over surveys and boundary lines, courses and distances yield to natural and ascertained objects. Leonard v. Forbing, 109 La. 220, 33 So. 203; Kirkpatrick v. McMillen, 14 La. 497.

The Kirkpatrick Case is particularly per-

tinent because of a similarity between that case and the one at bar.

In the case of Adams v. Drews, 110 La. 456, 34 So. 602, this court held that (quoting from the syllabus):

"Whilst an error in the description of real estate may be corrected as between the parties to the act in which it appears, a different case presents itself after a third person, acting in good faith, acquires rights with respect to the property as erroneously described. The error cannot be corrected to the prejudice of such rights."

On November 17, 1903, Gen. John B. Levert acquired from the widow of Bernard Melun, the then owner, the following described property:

"A certain lot of ground and improvements thereon, situated in the Seventh District of this City, in square No. 414, bounded by Carrollton Avenue (formerly Canal Avenue), Dublin (formerly Adam), Pritchard and Apricot (formerly Twelfth street); said lot of ground is designated by the letter 'C,' according to a plan made by H. L. Zander, Engineer and Surveyor, dated October 19th, 1903, and annexed hereto; said lot according to said plan measures One Hundred and Fifty Feet (150) front on Carrollton Avenue, the same in the rear and front on Dublin Street by Two Hundred and Ninety feet (290) in depth and front on Pritchard Street, and the same on the line dividing it from lot 'B'; said lot 'C' comprises the whole of lots 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 on said plan."

On February 9, 1903, Gen. Levert sold the property he acquired from the widow of Melun to the Carrollton Land & Improvement Company, Limited. In this deed the property is described as follows:

"A certain portion of ground, together with the improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in any wise appertaining, situated in the Seventh District of New Orleans, in square bounded by Pritchard, Apricot and Dublin Streets and Carrollton Avenue, and is designated by letter 'C' and subdivided into ten lots, numbers one to ten inclusive. Said portion of ground measuring two hundred and eight feet front on Pritchard street, by one hundred and fifty feet in depth and front on each of Dublin Street and Carrollton Avenue, being half of said square fronting on Pritchard Street."

On January 29, 1907, the Carrollton Land & Improvement Company, Limited, sold the property it had acquired from Levert to Gustave Gretzner, under the following description:

"A certain portion of ground, together with the improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in any wise appertaining, situated in the Seventh District of this city, in the square bounded by Pritchard, Apricot and Dublin Streets and Carrollton Avenue, and is designated by the letter 'C' and subdivided into ten lots numbered one to ten inclusive. Said portion of ground measuring two hundred and eighty feet front on Pritchard Street, by one hundred and fifty feet in depth and front on each of Dublin Street and Carrollton Avenue, being the half of the half of the square fronting on Pritchard Street."

Gretzner died, his widow and child were recognized as his sole heirs and sent into possession of his estate, and, in a sale to effect a partition thereof, Victor J. Passera, on October 5, 1925, purchased the property which is involved in this suit, and which is described in the deed to said vendee as follows:

"A certain portion or piece of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges. servitudes and advantages thereunto belonging, or in any wise appertaining, situated in the Seventh District of this City, in square 414, bounded by Carrollton Avenue, Pritchard Street (or Place), Apricot Street (formerly Twelfth) and Dublin Street (formerly Adams), which said piece or portion of ground commences at a point one hundred and thirty feet from the corner of Carrollton Avenue and Pritchard Place, and has a frontage on said Pritchard place of one hundred and ninety six feet and six inches to the line of Dublin Street, by a depth between parallel lines of one hundred and fifty feet, three inches and six lines, all as per plan of Elbert G. Sandoz, Civil Engineer and Surveyor, dated September 16th, 1925, and annexed to act of said vendor."

In all of the deeds, from Levert to Passera, inclusive, the boundaries are definitely fixed,

and in none of said deeds is there a reference to the Dublin street canal as being a boundary. In the deeds from Melun to Levert, Levert to the Carrollton Land & Improvement Company, Limited, and the Carrollton Land & Improvement Company, Limited, to Gretzner, the boundaries are given as Pritchard, Apricot, and Dublin streets and Carrollton avenue, and in the deed to Passera the description of the property conveyed to said vendee fixes Dublin street as one of its boundaries.

The petition of interveners was filed in this suit November 14, 1927, or 3 days less than 24 years after title to the property became vested in Gen. John B. Levert, or more than 20 years after Gustave Gretzner acquired it. It does not appear that Mr. Levert ever had physical possession of any part of the property, but it is conclusively shown that, when Gretzner acquired it, he took actual possession of all of the property except the part which was then in the Dublin street canal. He built residences and outbuildings, set out trees, and established a playground on it. The plaintiff's plea of 10 years' prescription as against any latent defect or error in description must be sustained, for plaintiff and each of his authors in title, including Mr. Levert, acquired the property in good faith and under title translative thereof.

The city of New Orleans not having appealed, the authorities cited in support of the proposition that when the canal was abandoned the fee reverted to the original owners need not be considered.

For the reasons stated, the judgment appealed from is affirmed, at appellant's cost.

## On Rehearing.

ROGERS, J. ▮ The pleadings of the parties litigant and the facts developed thereunder on the trial of the case are succinctly and correctly stated in our original opinion. We found on the prior hearing of the cause that Mrs. Bernard Melun, the ancestress of ten of the interveners, sold the property in question, which is one-half of the whole square, with reference to the existing canal, and that each of the succeeding vendors did likewise. The record also discloses that Daniel Loze, the ancestor of the two other interveners, sold the entire square, which he had previously acquired from Robert C. Cummings, to Bernard Melun, with reference to the four streets that constitute its boundaries. In none of the deeds is any reservation made of that portion of the property occupied by the drainage canal.

As will be observed from the descriptions as copied in our original opinion, the property transferred by Levert to the Carrollton Land & Improvement Company, Limited, and by that company subsequently conveyed to Gretzner, through whose widow and heirs it passed to plaintiff, was sold without reference to any plan whatever, and is designated as measuring 280 feet front on Pritchard street by 150 feet in depth and front on each Dublin street and Carrollton avenue, being half the square fronting Pritchard street. Both of these sales, according to the description of the property therein contained, are clearly within the definition of a sale per aversionem as set forth in the codal articles and decisions of this court referred to in our original opinion. The drainage canal itself lay within the line of Dublin street and within the half square of ground fronting Pritchard street.

Therefore, if all prior conveyances be entirely ignored, nevertheless the judgment must be for plaintiff on his plea of prescription of 10 years' acquirenda causa. On that phase of the case, the evidence leaves no doubt in the mind that Gretzner, at the time of his acquisition, took physical possession of the entire half square in question, except the portion that was in the canal. As to that portion of the property, however, Gretzner must

also be held to have taken actual possession, because his possession of part under his title carried his possession to the boundaries or limits of the land as set forth in his deed. Civ. Code, art. 3437.

In Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, this court had occasion to construe the codal article, and there held that the word "boundaries" as used in the article, making occupancy of part of land with intention to possess all that is included within boundaries possession of the whole, means the limits or marks of inclosures if the possession be without title, or the boundaries or limits stated in the deed, if the possession be under a title.

And in Lewis v. Standard Oil Co., 154 La. 1048, 98 So. 662, we construed article 3437 in connection with other articles of the Civil Code relating to titles by prescription (Nos. 3478, 3479, 3483, 3487, and 3498). There we said, at page 1051 of 154 La. (98 So. 663) of the opinion, that:

"The plain and reasonable meaning of these articles would seem to be that, where one purchases a parcel of land from another who purports to be the owner thereof, and the vendee in good faith and with the bona fide belief that he has acquired the whole, goes into actual possession of a part with intention of possession to the full extent of his title, he thereby acquires a perfect title to the whole after the expiration of 10 years, unless that possession has been interrupted in the meantime by the adverse possession of another, or some other legal claim or proceeding made or instituted within that period."

Neither Gretzner nor his successors in title were disturbed in their possession of the property by any adverse claim or demand until shortly before the present suit was instituted, which was approximately 20 years after Gretzner had taken actual possession under his title deed. The quasi possession of the city of New Orleans resulted merely from the exercise of its right of servitude of drain. Subject to this servitude, the land belonged to

its owner under the recorded title. When the municipality abandoned the canal, its servitude was, ipso facto, extinguished, and the full possession was restored to the owner of the land by which it was due.

For the reasons assigned, it is ordered that our original decree be reinstated and made the final judgment of this court.