290 So.2d 726 (1974)
Willie ADAMS
v.
Greene SPILLMAN.
No. 9649.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
Rehearing Denied March 18, 1974.
Writ Refused April 30, 1974.
*727 Curtis K. Stafford, Jr., Baton Rouge, for appellant.
Leon A. Picou, Jr., St. Francisville, for appellee.
Before SARTAIN and TUCKER[*], JJ., and WATSON, J. ad hoc.
WATSON, Judge ad hoc.
Willis Adams, a Baton Rouge realtor, filed this suit to recover a real estate commission of $5,500 from Greene D. Spillman, the landowner. A listing agreement was introduced into evidence. This agreement reads as follows:
"You are hereby employed as my/our exclusive agent with exclusive right irrevocably for a period of Sixty (60) Days from date to sell the following described property: 275 Acres of land located in Sec. 48, T-1-S, R-2-W. West Feliciana Parish La. for the sum of $200.00 per Acre, Net to Vendor"
On the back of the agreement is the following:
"Remarks: Description: 275 ACRES M/L, Located in Section 48 (& 49) T-1-S, R-2-W, (Ward 5) West Feliciana Parish, La.
Bounded on North by Est. Merrick &
E. O. Munson,
 " " South by Thoms & heirs of
C. H. Bickham
 " " East by Hwy. 967
 " " West by Mills Creek"
Under "OWNER" is written "Greene D. Spillman by Ray Spillman." Ray Spillman is the son of defendant, Greene D. Spillman, age 84 at the time of trial. An agreement to purchase was subsequently executed by a prospective purchaser, Tom Engquist, and by Greene D. Spillman, describing the property as that of:
". . . Greene D. Spillman located at Spillman, La. Located in Sections 48 & 49, T-1-S, R-2-W, West Feliciana Parish, La. and improvements, the grounds measuring about 275 acres as per title for the sum of Sixty Thousand, Five Hundred & No/100 Dollars . . ." (TR. 63) (Emphasis added)
On his own, Mr. Engquist, the prospective purchaser, had a survey of the property made which indicated that it contained only 223.64 acres. A title opinion was also obtained by Mr. Engquist describing the property as follows:
"A certain tract or parcel of land, together with all buildings and improvements thereon and all the rights, ways, privileges, servitudes, prescriptions and advantages thereunto belonging or in anywise appertaining, situated in Sections 48 and 49, Township 1 South, Range 2 West, St. Helena Meridian, West Feliciana Parish, Louisiana, containing *728 275 acres, more or less, being bounded now or formerly as follows:
North by lands of the heirs of E. T. Merrick, and lands of Dr. E. O. Munson, on the East by Highway 967, on the South by lands of J. Aubrey Spillman, and lands of C. H. Bickham, and on the West by Mill Creek."
Mr. Engquist's attorney testified that this was the description under which Mr. Spillman acquired the property.
After securing the survey, Mr. Engquist refused to buy without a reduction in price. Mr. Spillman refused to sell without receiving $55,000. The sale was not concluded, and this suit resulted.
At the trial, Ray Spillman, whose full name is Charles Ray Spillman, testified that he was not legally authorized to sign the listing agreement on behalf of his father; that his father was willing to sell the property for a net sum of $55,000; that Mr. Paul Arbeau, an employee of plaintiff, composed the listing agreement; and that his father did not ever see the listing agreement. Mr. Greene D. Spillman testified that he bought the property in question in 1937 as more or less 275 acres; that he told Mr. Arbeau he wanted $55,000 for the property; and that any commission to Mr. Arbeau would have to be added on top of that.
The trial court dismissed plaintiff realtor's suit, finding that the parties signed the agreement to purchase under an error of fact, LSA-C.C. arts. 1821, 1823, 1825, the prospective seller honestly believing he had 275 acres, as set forth in his deed, and not intending to sell for less than a net lump sum of $55,000 and the prospective purchaser not intending to pay $60,500 for 223.64 acres. We affirm.
Plaintiff real estate agent has appealed, making the following contentions quoted from his brief:
"1. There was a valid listing agreement signed by Greene D. Spillman's ostensible agent, his son Ray, upon which Appellant should have been able to rely. According to this listing agreement, the property was to be sold at the rate of $200.00 an acre, which the Appellee subsequently refused.
"2. If the Court finds that this written listing agreement to be invalid, then a subsequent oral listing agreement, to which Mr. Greene D. Spillman was a party, did not in any way deviate in its terms from the written instrument.
"3. That, in any event, notwithstanding the terms of any previous agreement, written or oral, Mr. Greene D. Spillman signed a valid and subsisting contract to sell, in which the sale of the property in question was described, according to the Language of LSA-CC Article 2494, as the sale of a specific immovable for a lump sum.
"4. That the sale of an immovable under the terms of LSA-CC Article 2494 establishes a presumption in law that the parties contemplated that a purchaser will be permitted to purchase for a proportionately diminished price if the acreage deficiency is greater than 1/20th.
"5. That the failure of a buyer to accept a dimunition in purchase price under LSA-CC Article 2494 constitutes `fault' on his part, and that therefore the Appellant is entitled to his commission of $5,500.00 under the jurisprudence cited herein."
Mr. Greene D. Spillman admitted his willingness to have plaintiff's agent, Mr. Arbeau, sell his property and that he did in fact execute the agreement to buy and sell. Therefore, the question of Ray Spillman's authority to sign the listing agreement is moot.
"The parties . . . were free to modify the listing . . . agreement by mutually agreeable subsequent amendment." Strahan v. Weiland, 216 So.2d 169 at 173 (La.App. 1 Cir. 1968).
*729 Parol evidence was properly considered by the trial court in determining the intent of the parties. Strahan v. Weiland, supra.
"In the search for the intention of the parties, we are to look to the whole language of the instrument, and the surrounding circumstances to which the instrument itself points." Peck v. Bemiss, 10 La.Ann. 160 (1855) at 162.
According to the unrefuted testimony of both Greene D. Spillman and Ray Spillman, the former intended to sell his farm as a whole for a net sum of $55,000, as witness the phrase "Net to Vendor". Ray Spillman testified that the language in the listing agreement referring to $200 per acre was inserted by Mr. Arbeau after he calculated what the per acre price would be if there were 275 acres. The only evidence as to what Mr. Greene D. Spillman intended to do with his property is that contained in the written agreements and that given by him and his son. As the trial court pointed out: "Plaintiff did not call his employee, Mr. Arbeau, to testify at trial and no reason was given for this failure to do so." (TR. 18) Plaintiff himself never had any contact with defendant Spillman nor did Mr. Engquist.
The description on the back of the listing agreement explains and amplifies the brief description of the property on the front. The boundaries given in the description on the back make this an agreement for a sale "per aversionem". LSA-C.C. art 2495 rather than LSA-C.C. art. 2494 applies. LSA-C.C. art. 2495 provides:
"There can be neither increase nor diminution of price on account of disagreement in measure, when the object is designated by the adjoining tenements, and sold from boundary to boundary."
A description of property by boundaries prevails over a description referring to quantity or measurement. Cornish v. Kinder Canal Company, 267 So.2d 625 (La.App. 3 Cir.1972); writs denied 263 La. 624, 268 So.2d 679; 263 La. 800, 269 So.2d 248; W. B. Thompson and Company v. McNair, 199 La. 918, 7 So.2d 184 (1942).
"In Louisiana and at common law, a sale per aversionem conveys all the property actually within the stated boundaries, whether the quantity be correctly stated in the deed or not, since the designation of boundaries controls the enumeration of quantity. Arts. 854, 2495, La. Civil Code of 1870; Cuny v. Archinard, 5 Mart. (N.S.) 238 (La. 1826); Passera v. City of New Orleans, 167 La. 199, 118 So. 887 (1928); Consolidated Companies v. Haas Land Co., 179 La. 19, 153 So. 6 (1934); Morris Canal Co. v. Emmett, 9 Paige 168 (N.Y.1841). The rationale of this rule is that the parties intended to contract with reference to the boundaries rather than to the enumeration of quantity. Boyce v. Cage, supra. Therefore, in case of deficiency, the purchaser is not entitled to specific performance, or to a diminution of the price; nor can he resolve the sale. Johnston v. Quarles, 3 La. 90 (1831); Kirkpatrick v. M'Millen, 14 La. 497 (1840); Saulet v. Trepagnier, 2 Rob. 357 (La.1842); Zevingne v. Williams, 15 La.Ann. 76 (1860); Consolidated Companies v. Haas Land Co., supra." 16 TLR 641 at 643.
The agreement to buy and sell confirms the intention of the parties to sell a certain piece of property within specified boundaries with the words "as per title," Mr. Engquist's attorney testified that what was meant by this was the description in his title opinion, quoted above. Mr. Spillman intended to sell what he had purchased in 1937. To use the phraseology of Gay v. Larimore, 26 La Ann. 253 (1874), he ". . . purchased by boundaries; he sold by boundaries." 26 La.Ann. 254.
A real estate agent, such as plaintiff, employed to sell property, is entitled to a commission when he has secured a purchaser ready, willing and able to buy on vendor's terms. Landry & Passman Realty, Inc. v. Keen, 170 So.2d 775 (La. App. 1 Cir.1964). The question of what *730 constitutes ability to perform on the part of the proposed purchaser depends on the circumstances; a prospective purchaser must be willing ". . . to complete the contract of purchase according to its terms." Morere v. Dixon Real Estate Co., 188 So.2d 623 at 627 (La.App. 4 Cir.1966). In the instant case, Engquist was not willing to complete the purchase per aversionem. Hence, plaintiff did not procure a purchaser willing to buy the property on the terms specified by the prospective seller.
The error in the agreement and the consequent failure to conclude the sale was not the result of fault or bad faith on the part of defendant Spillman. Hence, plaintiff cannot recover his commission. The Office Center, Inc. v. Tanenbaum, 225 So. 2d 740 (La.App. 4 Cir. 1969); Marvin Corporation v. Stein, 154 So.2d 56 (La.App. 4 Cir.1963).
Costs are taxed against appellant.
Affirmed.
NOTES
[*] TUCKER, J., died on the 25th day of January, 1974. Prior to his death, he indicated his intention to dissent.